**THE ROSEN LAW FIRM, P.A.**
Laurence M. Rosen, Esq. (LR 5733)
Phillip Kim, Esq. (PK 9384)
Jonathan Horne, Esq. (JH 7258)
275 Madison Avenue, 34th Floor
New York, New York 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: lrosen@rosenlegal.com
Counsel for Plaintiff

JUDGE ENGELMAYER

12 CIV 6682




UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| STEVE LESHINSKY, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,<br><br>Plaintiff,<br><br>v.<br><br>JAMES JUN WANG, ZHIJUAN GUO, WEIGUO WANG, ARNOLD STALOFF, and SMARTHEAT, INC.<br><br>Defendants. | Case No:<br><br>ECF CASE<br><br>CLASS ACTION<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

1. Plaintiff Steve Leshinsky, by his undersigned attorneys, for his complaint against Defendants James Jun Wang, Zhijuan Guo, Weiguo Wang, Arnold Staloff, and SmartHeat, Inc., alleges the following based upon personal knowledge as to himself and his own acts, and information and belief as to all other matters.

**NATURE OF THE ACTION**

2. This is a federal securities class action on behalf of a class consisting of all persons and entities, other than defendants and their affiliates, who purchased the publicly traded common stock of SmartHeat from February 24 to May 3, 2010.

3. During the Class Period, SmartHeat failed to disclose that its founder, CEO, and the Chair of its Board, was secretly selling at least half of his SmartHeat shares for $23 million.

4. The federal securities law requires officers and directors of public companies to report transactions in their company's stock. The CEO thus violated federal law.

5. SEC regulations require issuers accurately to disclose share ownership of officers and directors in various filings. SmartHeat's SEC filings failed to take into account its CEO's sale of nearly half his shares, and were thus false and misleading.

6. The federal securities laws require that officers certify that they are responsible for maintaining adequate controls over financial reporting. Defendants Wang and Sha each certified that they maintained adequate controls over financial reporting. This statement was false because the internal controls to whose adequacy the CEO certified did not prevent him from engaging in the fraudulent stock sales.

7. Plaintiff purchased SmartHeat shares and was damaged thereby.

**JURISDICTION AND VENUE**

8. The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. § 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5).

9. This Court has jurisdiction over the subject matter of this action pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331.

10. Venue is proper in this Judicial District pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391(b) as a substantial part of the conduct complained of herein occurred in this District.

11. In connection with the acts, conduct and other wrongs alleged herein, Defendants either directly or indirectly used the means and instrumentalities of interstate commerce, including but not limited to the United States mails, interstate telephone communications and the facilities of the national securities exchange.

**PARTIES**

12. Plaintiff Steve Leshinsky purchased Heat securities and has been damaged thereby. His PSLRA certification is attached as Exhibit 1 to this Complaint and is incorporated by reference.

13. Defendant James Jun Wang is SmartHeat's founder. During the Class Period, Defendant Wang was SmartHeat's CEO and the Chair of its Board. Defendant Wang resigned from his role as SmartHeat's CEO after a two-day Board meeting on July 24 and July 25. Defendant Wang, however, retained his positions with SmartHeat's subsidiaries.

14. Defendant Zhijuan Guo was SmartHeat's CFO during the Class Period and until the July 24-25 meeting, where she resigned from all roles and responsibilities with SmartHeat or its subsidiaries.

15. Defendant Weiguo Wang ("W. Wang") was at all relevant times a director of SmartHeat and the chair of its compensation committee.

16. Defendant Arnold Staloff was at all relevant times a director of SmartHeat, the chair of its audit committee, and a member of its compensation committee.

17. Collectively, Defendants Wang, Guo, W. Wang, and Staloff are the "Individual Defendants

18. Defendant SmartHeat, Inc., is a Nevada holding company whose main operations are located in China.

**DEFENDANTS' MISCONDUCT**

19. SmartHeat is a reverse-merger. In a reverse-merger, a dormant U.S. publicly-traded shell with no operations acquires a privately held company. In exchange, the privately-held company acquires substantially all of the shares of the publicly-traded company. Thus, while in form a reverse-merger is an acquisition of a private company by a public company, in economic substance it is the acquisition of a public company by a private company.

20. In SmartHeat's corporate history, the shell was Pacific Goldrim Resources, Inc., and the private company it "acquired" was Shenyang Taiyu Machinery & Electronics Equipment Co., Ltd. ("Taiyu").

21. Defendant Wang was SmartHeat's CEO for the entire Class Period and Chair of its Board.

22. Defendant Wang founded Taiyu. Hence, Defendant Wang "founded" SmartHeat. In every press release it issued during the class period, SmartHeat identified Defendant Wang as its founder.

23. SmartHeat regularly touted Defendant Wang's experience and expertise as a reason for investors to invest in SmartHeat. For example, SmartHeat touted his education at "China's 'MIT'", his tenure as "the" sales manager at Honeywell China.

24. SmartHeat similarly touted Defendant Wang's vision in founding Taiyu, and leadership in maintaining it.

25. SmartHeat touted Defendant Wang's near-10% ownership of it. As a result of his 10% ownership of SmartHeat, Defendant Wang was allegedly SmartHeat's second largest shareholder.

26. As a matter of common sense, investors believe that a company is better led when its CEO and Chair has "skin-in-the-game". Investors rationally believed that since Defendant Wang was SmartHeat's largest single shareholder, he would look out for SmartHeat's interests.

27. Between February 24 and May 3, 2010, Defendant Wang secretly sold at least half and very likely substantially all his holdings -- 380,000 shares[1] -- of SmartHeat stock for $23 million.

28. At this time, SmartHeat's shares traded at approximately $100-$130 per share. This was near its peak of $186.00 per share, reached in January of 2010, shortly before Defendant Wang began his scheme to offload his shares. SmartHeat's shares were halted at the price of $4.04 per share.

29. At the time of the sale, Defendant Wang owned 340,400 shares of SmartHeat through his one-half interest in Beijing YSKN Machinery & Electronic Equipment Co., Ltd. ("YSKN"), which owned 680,800. He acquired an additional 32,900 shares through SmartHeat's stock incentive compensation program on November 28, 2011.

30. According to SmartHeat's SEC filings, Defendant Wang and third-party Fang Li each hold 50% of the equitable and legal rights, title and interests in and to the share capital of YSKN, and each have the shared power to vote and dispose of the shares held by Beijing YSKN.

31. Between February 24 and May 3, 2010, Defendant Wang directed the sale of 380,000 shares of SmartHeat stock of, at a cumulative price of over $23 million.

32. The stock thereby sold belonged to YSKN, and amounted to over half of YSKN's stock.

33. Hence, Defendant Wang should have caused the following filings to be made:

a. A Form 4, on behalf of himself, announcing a sale of 190,000 of his shares; and

b. An Amendment to YSKN's Schedule 13D, announcing that it had sold 380,000 shares.

34. SmartHeat was required accurately to provide the number of shares beneficially owned by Defendant Wang in every SEC filing subject to Regulation S-K. 17 C.F.R. § 229.403(b). SmartHeat was also required accurately to provide the number of shares beneficially owned by YSKN, as a 5% owner of SmartHeat's stock, in each such filing. *Id.* at (a).

---

[1] Adjusted for a 10-1 reverse stock split which took place on February 7, 2012.

35. SmartHeat was required accurately to disclose YSKN and Defendant Wang's share ownership in every 10-K and any registration statement it filed with the SEC, as well as any annual statement it issued securities holders. *See* 17 C.F.R. § 229.10.

36. Hence the following SEC filings were false and misleading:

a. SmartHeat's 2010 10-K, filed with the SEC on March 15, 2011;

b. SmartHeat's 2011 10-K, filed with the SEC on April 2, 2012;

c. SmartHeat's Registration Statement on Form S-3, filed with the SEC on October 15, 2010;

d. SmartHeat's proxy statement to security holders for the May 25, 2010 annual meeting, filed with the SEC on April 16, 2010;

e. SmartHeat's proxy statement to security holders for the annual meeting to be held on September 23, 2011, filed with the SEC on August 8, 2011.

37. In addition, any document that incorporated any of these documents by reference was thereby made false and misleading. This includes a Prospectus and Supplement dated November 18, 2010, pursuant to which SmartHeat received net proceeds $27,268,866.50 on sales of $28,704,070 of stock.

38. Each of these filings stated that Defendant Wan beneficially owned 372,900 shares both directly and through his 50% ownership of Beijing YSKN Machinery & Electronic Equipment Co., Ltd.

39. Investors rightly expected SmartHeat's CEO's interests to be aligned with their own. When SmartHeat trumpeted that its CEO owns nearly 10% of its shares, and is therefore its second largest shareholder, shareholders rightly expected that his economic interests would be well aligned with their own.

40. Because of his inside knowledge, the fact that SmartHeat's CEO was liquidating his entire position would have been material to investors.

41. According to SmartHeat's SEC filings, Defendant Wang was paid $150,000 in each of 2010 and 2011. This amount, though obviously quite large, pales in comparison to the $23 million Defendant Wang earned by liquidating his entire holdings.

42. One risk incurred by failing to make required disclosures is that the SEC will enjoin the person responsible from serving as an officer or director of a public company.

43. A second risk incurred by failing to make required disclosures is that the stock exchange on which the entity's security trades will delist the issuer's stock when it discovers that its CEO has failed to make required disclosures.

**DEFENDANTS' MISCONDUCT IS REVEALED**

**CAUSING PLAINTIFF' LOSSES**

44. Because Defendant Wang was selling over 5% of SmartHeat's stock onto public markets over the course of just two months, SmartHeat's stock price rapidly declined as he sold his shares.

45. On May 24 and 25, 2012, SmartHeat's Board of Directors held a two day Board meeting. At the conclusion of the meeting, Defendants Wang and Guo "resigned" from their roles as Chairman and CEO, and CFO, respectively.

46. On May 30, 2012, at 6:55 A.M. Eastern Standard Time, SmartHeat announced that it had accepted the "resignations" of Defendants Wang and Guo.

47. At 8:23:51 A.M. on May 30, 2012 -- prior to market opening -- the NASDAQ announced that trading in SmartHeat's shares would remain halted until SmartHeat satisfied NASDAQ's request for additional information.

48. Trading has remained halted until the filing of this complaint.

49. No investor would be willing to invest in a "pump-and-dump" scheme where the founder of a company has secretly divested himself of the majority of his shares. Consequently, Plaintiff's shares are very likely worthless.

**PLAINTIFF' CLASS ACTION ALLEGATIONS**

50. Plaintiff bring this action as a class action pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3) on behalf of a Class consisting of all persons who purchased the common stock of SmartHeat during the Class Period and who were damaged thereby. Excluded from the Class are Defendants, the present and former officers and directors of SmartHeat and any subsidiary thereof, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

51. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, SmartHeat's stock was actively traded on the NASDAQ.

52. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believe that there are at least hundreds, if not thousands, of members in the proposed Class. Members of the Class may be identified from records maintained by SmartHeat or its transfer agent and may be notified of the pendency of this action by mail, using a form of notice customarily used in securities class actions.

53. Plaintiff' claims are typical of the claims of the members of the Class, as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

54. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

55. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

a. whether the federal securities laws were violated by Defendants' acts as alleged herein;

b. whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, and financial performance of SmartHeat; and

c. to what extent the members of the Class have sustained damages and the proper measure of damages.

56. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to redress individually the wrongs done to them. There will be no difficulty in the management of this action as a class action.

**RELIANCE PRESUMPTION**

57. Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 506 U.S. 128, 92 S. Ct. 2430 (1972). Defendants are charged with material omissions. It is impossible, on a practical basis, to prove reliance on statements that the defendants were required to, but did not, make.

58. In the alternative, the information defendants were required to disclose would have significantly altered the total mix of information available regarding the value of SmartHeat shares.

59. At all relevant times, the market for SmartHeat common stock was an efficient market for the following reasons, among others:

a. SmartHeat stock met the requirements for listing, and was listed and actively traded on the NASDAQ under ticker symbol "HEAT". The NASDAQ is a highly efficient and automated markets;

b. As a regulated issuer SmartHeat filed with the SEC periodic public reports and was eligible to file S-3 registration statements with the SEC during the Class Period;

c. SmartHeat regularly communicated with public investors via established market communication mechanisms, including regular disseminations of press releases on the national circuits of major newswire services and other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services;

d. SmartHeat was followed by several securities analysts employed by major brokerage firms who wrote reports that were distributed to the sales force and certain customers of their respective brokerage firms during the Class Period;

e. Unexpected material news about SmartHeat was rapidly reflected in and incorporated into the Company’s stock price during the Class Period.

**FIRST CAUSE OF ACTION**

**Violation of Section 10(b) of The Exchange Act Against and Rule 10b-5**

**Promulgated Thereunder Against Defendants Wang and SmartHeat**

60. Plaintiff incorporates ¶¶1-59 as if fully set forth herein.

61. This cause of action is asserted against all Defendants.

62. During the Class Period, defendants carried out a plan, scheme and course of conduct which was intended to, and throughout the Class Period, did: (1) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (2) cause Plaintiff and other members of the Class to purchase and/or sell SmartHeat's securities at artificially inflated and distorted prices. In furtherance of this unlawful scheme, plan and course of conduct, defendants, individually and as a group, took the actions set forth herein.

63. Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the business, operations and future prospects of SmartHeat as specified herein.

64. Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of SmartHeat 'svalue and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and omitting to state material facts necessary in order to make the statements made about SmartHeat and its business operations and financial condition in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business that operated as a fraud and deceit upon the purchasers SmartHeat securities during the Class Period.

65. Each of the defendants' primary liability, and controlling person liability, arises from the following: (a) defendants were high-level executives, directors, and/or agents at the Company during the Class Period and members of the Company's management team or had control thereof; (b) by virtue of their responsibilities and activities as senior officers and/or directors of the Company, were privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (c) defendants enjoyed significant personal contact and familiarity with the other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and (d) defendants were aware of the Company's dissemination of information to the investing public which they knew or recklessly disregarded was materially false and misleading.

66. Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing SmartHeat's financial condition from the investing public and supporting the artificially inflated price of its securities. As demonstrated by defendants' false and misleading statements during the Class Period, defendants, if they did not

have actual knowledge of the misrepresentations and omissions alleged, were reckless in failing to obtain such knowledge by failing to take steps necessary to discover whether those statements were false or misleading.

67. As a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the market price for SmartHeat's securities was artificially inflated during the Class Period.

68. In ignorance of the fact that market prices of SmartHeat's publicly-traded securities were artificially inflated or distorted, and relying directly or indirectly on the false and misleading statements made by defendants, or upon the integrity of the market in which the Company’s securities trade, and/or on the absence of material adverse information that was known to or recklessly disregarded by defendants but not disclosed in public statements by defendants during the Class Period, Plaintiff and the other members of the Class acquired SmartHeat's securities during the Class Period at artificially high prices and were damaged thereby.

69. At the time of said misrepresentations and omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true. Had Plaintiff and the other members of the Class and the marketplace known the truth regarding SmartHeat's financial results and condition, which were not disclosed by defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired SmartHeat securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices or distorted prices at which they did.

70. By virtue of the foregoing, the defendants have violated Section 10(b) of the Exchange Act, and Rule 10b-5 promulgated thereunder.

71. As a direct and proximate result of the Defendants’ wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company’s securities during the Class Period.

72. This action was filed within two years of discovery of the fraud and within five years of Plaintiff' purchases of securities giving rise to the cause of action.

**SECOND CAUSE OF ACTION**

**Violation of Section 20(a) of The Exchange Act**

**Against the Individual Defendants**

73. Plaintiff incorporates ¶¶1-59 as if fully set forth herein.

74. This second cause of action is asserted against each of the Individual Defendants.

75. The Individual Defendants acted as controlling persons of SmartHeat within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions, agency, and their ownership and contractual rights, participation in and/or awareness of the Company's operations and/or intimate knowledge of aspects of the Company's revenues and earnings and dissemination of information to the investing public, the Individual Defendants had the power to influence and control, and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements that Plaintiff contend are false and misleading. The Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued, and had the ability to prevent the issuance of the statements or to cause the statements to be corrected.

76. In particular, each of these Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

77. As set forth above, SmartHeat and Defendant Wang each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint.

78. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act as they culpably participated in the fraud alleged herein. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's common stock during the Class Period.

79. This action was filed within two years of discovery of the fraud and within five years of Plaintiff' purchases of securities giving rise to the cause of action.

**THIRD CAUSE OF ACTION**

**Violation Of Section 20A Of The Exchange Act**

**Against Defendant Wang**

80. Plaintiff incorporate ¶¶1-59 as if fully set forth herein.

81. This claim is asserted under Section 20A of the Exchange Act against Defendant Wang.

82. During the relevant period, Defendant Wang occupied a position with SmartHeat that made him privy to confidential information about SmartHeat. In particular, Defendant Wang was privy to the information that SmarHeat's CEO was in the process of selling half of his holdings of SmartHeat's stock.

83. Notwithstanding his duty to refrain from trading in SmartHeat's stock unless he disclosed the foregoing material adverse facts to the investing public, Defendant Wang sold $23 million worth of SmartHeat stock during the relevant period.

84. Defendant Wang sold his SmartHeat securities at prices artificially inflated by the nondisclosure and misrepresentations of material adverse facts which were not known to the investing public, including Plaintiff. Before selling to the public, Defendant Wang was obligated to disclose this information to Plaintiff.

85. By reason of the foregoing, Defendant Wang directly and indirectly, by use of the means and instrumentalities of interstate commerce, the mails, and the facilities of the national securities exchanges, employed devices, schemes, and artifices to defraud, and engaged in acts

and transactions and a course of business which operated as a fraud or deceit upon the Plaintiff who purchased SmartHeat stock contemporaneously with Defendant Wang's insider sales.

86. Plaintiff who purchased SmartHeat stock contemporaneously with the insider sales: (1) have suffered substantial damages because they relied upon the accuracy of Defendants' false and misleading statement and paid artificially inflated prices for SmartHeat securities as a result of the violations of Section 10(b) and Rule 10b-5 alleged herein; and (2) would not have purchased SmartHeat stock at the prices they paid, or at all, if they had been aware that the market prices had been artificially and falsely inflated by Defendants' misleading statements and concealment. At the time of the Plaintiff' purchases, the fair and true value of SmartHEat common stock was substantially less than the prices paid by them.

87. As a result of the foregoing, Plaintiff have suffered substantial damages.

88. This action is brought within five years of the contemporaneous purchases.

**JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury.

**WHEREFORE**, Plaintiff pray for relief and judgment, as follows:

a. Determining that this action is a proper class action and certifying Plaintiff as class representatives under Rule 23 of the Federal Rules of Civil Procedure and Plaintiff' counsel as Class Counsel;

b. Awarding compensatory damages in favor of Plaintiff and the other Class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

c. Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees;

d. Ordering an accounting of Defendant Wang's insider-trading proceeds;

e. Awarding Plaintiff such equitable/injunctive and further relief under Section 20A of the Exchange Act; and

f. Awarding Plaintiff such other and further relief as the Court may deem just and proper.

Dated: August 30, 2012

Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**

Laurence M. Rosen, Esq. (LR5733)
Phillip Kim, Esq. (PK 9384)
Jonathan Horne (JH 7258)
THE ROSEN LAW FIRM, P.A.
275 Madison Avenue, 34th Floor
New York, NY, 10016
Telephone: (212) 686-1060
Facsimile: (212) 202-3827
Email: lrosen@rosenlegal.com

# EXHIBIT 1

REDACTED

CERTIFICATION

Certification and Authorization of Named Plaintiff Pursuant to Federal Securities Laws

The individual or institution listed below (the "Plaintiff") authorizes and, upon execution of the accompanyingretainer agreement by The Rosen Law Firm P.A., retains The Rosen Law Firm P.A. to file an action under the federal securities laws to recover damages and to seek other relief against SmartHeat, Inc., Inc. The Rosen Law Firm P.A. will prosecute the action on a contingent fee basis and will advance all costs and expenses. The SmartHeat, Inc., Inc. Retention Agreement provided to the Plaintiff is incorporated by reference, upon execution by The Rosen Law Firm P.A.

First Name: Steve
Middle Initial: R
Last Name: Leshinsky
Mailing Address:
City:
State:
Zip Code:
Country: United States
Phone:
Email:
Are you a current or former employee of the company? no
The Plaintiff Certifies that:

1. Plaintiff has reviewed the complaint and authorized its filing.

2. Plaintiff did not acquire the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in this private action or any other litigation under the federal securities laws.

3. Plaintiff is willing to serve as a representative party on behalf of a class, including providing testimony at deposition and trial, if necessary.

4. Plaintiff represents and warrants that he/she/it is fully authorized to enter into and execute this certification.

5. Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

6. Plaintiff has made no transaction(s) during the Class Period in the debt or equity securities that are the subject of this action except those set forth below:

**Shares Purchased**

| Type of Security | Buy Date | # of Shares: | Price per Share |
|---|---|---|---|
| Common Stock | 2010-04-06 | 1000 | 9.96 |

7. I have not served as a representative party on behalf of a class under the federal security laws during the last three years, except if detailed below.
i have not

I declare under penalty of perjury, under the laws of the United States, that the information entered is accurate: Yes

I intend to sign and execute this agreement and retain the Rosen Law Firm, P.A. to proceed on Plaintiff's behalf, on a contingent fee basis: Yes

Date of signing [06/26/2012]